IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **National Union Fire Insurance Company of Pittsburgh, Pa.,**<br><br>           **Plaintiff,**<br><br>v.<br><br>**RealPage, Inc.,**<br><br>           **Defendant.** | **Civil Action No.:** |

## COMPLAINT

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") files this Complaint against Defendant RealPage, Inc. ("RealPage") and alleges the following:

### NATURE OF THE CASE

1. This is an action for breach of contract due to RealPage's failure to fulfill its contractual obligations under a commercial crime policy issued by National Union to RealPage.

2. During the applicable policy period, hackers defrauded RealPage through a phishing scheme and stole approximately $6 million.

3. Thereafter, RealPage sought coverage under a Commercial Crime Policy ("the Policy") it maintained with National Union on the theory that the phishing scheme constituted a computer crime.

4. National Union determined that only a portion of RealPage's loss was covered under the policy and paid RealPage $1,067,560.73 for its partially covered loss.

1

5. Thereafter RealPage filed suit in this Court against National Union over its partial coverage position, and both this Court and the Fifth Circuit Court of Appeals found that National Union's partial coverage for the phishing-scheme theft was proper under the Policy. *See RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 521 F. Supp. 3d 645 (N.D. Tex. 2021) (Civil Action No. 3:19-CV-1350-B); *see also RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 21 F.4th 294, 299 (5th Cir. 2021).

6. Through criminal restitution proceedings, the federal government recovered approximately $3 million of the stolen funds from the phishing-scheme theft and returned those recovered funds to RealPage.

7. The Policy issued by National Union to RealPage contains an allocation of recoveries provision that entitles National Union to reimbursement – and likewise obligates RealPage to reimburse National Union – for the amount ($1,067,560.73) that National Union paid RealPage for its partially covered loss.

8. Following several unsuccessful demands, National Union now brings this breach of contract action against RealPage as part of its ongoing effort to enforce the allocation of recovery provision and receive the funds it is entitled pursuant to the commercial crime policy's plain terms.

## THE PARTIES

9. National Union is an insurance company formed under Pennsylvania law and is licensed by the Texas Department of Insurance to do business in Texas.

10. RealPage is a corporation formed under Delaware law, has its principal place of business in Richardson, Texas, and regularly conducts business in the State of Texas.

11. RealPage provides software to the real estate industry. One of the services RealPage provides is the collection, management, and transfer of rent payments and other funds from residents to the owners of residential properties.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over RealPage because RealPage's principal place of business is in the State of Texas, and RealPage regularly conducts business in the State of Texas.

14. Venue is proper in this Court under 28 U.S.C. § 1391 because RealPage is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to the breach of contract claim alleged in this Complaint occurred in this District.

## FACTUAL BACKGROUND

**A. RealPage Experiences a Phishing Incident.**

15. In 2018, RealPage maintained and provided an online payment processing platform designed to collect rent from tenants and then disburse those funds into landlord-clients' bank accounts.

16. As part of this service, RealPage utilized third-party payment processor Stripe, Inc. ("Stripe") to process rent payments.

17. Using an online platform maintained by RealPage, tenants and landlord-clients submitted bank account and credit information to RealPage, and RealPage transmitted that information to Stripe. Following instructions provided by RealPage, Stripe transferred payments

from tenants' bank accounts into its own bank account and then distributed those funds to RealPage's accounts (less any transactional fees owed to RealPage).

18. In May of 2018, hackers successfully deployed a phishing scheme and obtained RealPage's login credentials for the Stripe online payment processing platform.

19. Upon obtaining RealPage's login credentials to the payment procession platform, the hackers altered the disbursement instructions to divert payments from Stripe's bank account that collected tenants' rent to accounts under the hackers' control.

20. Through effectuating this scheme, the hackers diverted more than $10 million in funds from Stripe's bank account that had not yet been disbursed to the appropriate recipients into accounts under the hackers' control.

21. Among the stolen funds from Stripe's bank account were transactional fees intended for RealPage and rent payments intended for landlord-clients.

22. Following the phishing scheme theft, RealPage worked with Stripe to halt a portion of the diverted payments, but RealPage was unable to recover more than $6 million of the stolen funds.

23. Upon information and belief, RealPage reimbursed its landlord-clients for all stolen funds.

**B. National Union Partially Covers RealPage's Loss under the Commercial Crime Policy for Stolen Transactional Fees but Denies Coverage for Stolen Client Funds.**

24. Prior to the phishing scheme, RealPage obtained insurance through National Union. National Union issued Commercial Crime Policy No. 01-317-15-74 to RealPage, with a policy period of March 31, 2018, to March 31, 2019, and limits of $5 million per occurrence and subject to a $50,000 deductible (the "Policy").

25. Pertinent to RealPage's claims, the Policy includes a Computer Fraud insuring agreement and a Funds Transfer Fraud insuring agreement.

26. The Computer Fraud insuring agreement provides:

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition E.1.j.:

\* \* \*

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

a. To a person "other than a messenger" outside of those "premises"; or

b. To a place outside those "premises".

27. The Funds Transfer Fraud insuring agreement provides:

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition E.1.j.:

\* \* \*

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account."

28. Critically, the Policy also contains an "ownership clause" that made clear that the Policy covers only direct losses to RealPage. Condition P states:

The property covered under this policy is limited to property:

(1) That you own or lease; or

5

>(2) That you hold for others whether or not you are legally liable for the loss of such property.
>
>However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

29. Following the phishing scheme incident, RealPage sought coverage under the Policy for $6,022,021 of stolen funds, which consisted of $1,067,560.73 in stolen transaction fees intended for RealPage.

30. National Union determined that the $1,067,560.73 of stolen transaction fees belonged to RealPage and was therefore covered under the Computer Fraud coverage part.

31. Following its investigation, National Union denied coverage for the remaining amount of RealPage's claimed loss because RealPage did not own or hold the stolen rent payments that belonged to landlord-clients.

32. Pursuant to § 542.057(a) of the Texas Insurance Code, on January 31, 2019, National Union promptly paid RealPage $1,067,560.73 for partial coverage under the Policy on January 31, 2019.

33. As such, National Union fulfilled all legal obligations under the Policy.

### C. The Northern District of Texas and Fifth Circuit Court of Appeals Confirm that National Union's Partial Coverage was Proper.

34. Following National Union's determination that RealPage's loss was partially covered under the Policy, RealPage filed suit against National Union in the United States District Court for the Northern District of Texas for breach of contract, declaratory relief, and violations of the Texas Insurance Code. *See RealPage Inc.*, 521 F. Supp. 3d at 645 (Civil Action No. 3:19-CV-1350-B).

35. This Court granted summary judgment to National Union on all counts on February 24, 2021. *Id.*

36. This Court found that National Union's partial coverage was proper on that basis that RealPage never "held" the stolen client funds because those funds were deposited into Stripe's bank account at the time of their theft:

> In sum, funds that are maintained in a commingled account in a third party's name, at a third-party bank, which the insured can direct but not access, are not funds "held" by the insured. The Court recognizes that RealPage might have intended to "hold" the client's funds. Further, the Court acknowledges that the bad actors utilized RealPage credentials to obtain the funds. Nevertheless, the Court's task is to interpret the Policy's language. And here, based on the plain meaning of "hold," RealPage did not hold the funds. RealPage could have contracted for a broader definition of covered property. But it did not. Accordingly, the Court concludes that the client funds are not covered property under the Policy and GRANTS summary judgment in favor of National Union and Beazley on RealPage's declaratory judgment, breach-of-contract, and anticipatory breach-of-contract claims.

*Id.* at 659.

37. RealPage appealed this Court's judgment to the Fifth Circuit Court of Appeals, and on December 22, 2021, the Fifth Circuit affirmed this Court's holding. *See RealPage, Inc.*, 21 F.4th at 299.

38. In its opinion, the Fifth Circuit determined that RealPage did not hold the stolen landlord-client funds at the time of the theft: "RealPage never possessed its property manager clients' funds that got caught in the phishers' net." *Id.*

39. Both this Court and the Fifth Circuit found that National Union's partial coverage under the Policy was proper, and that National Union fulfilled its obligations under the Policy.

**D. RealPage Recovered Nearly $3 Million in Stolen Funds Through Government Recovery Actions and is Obligated to Reimburse National Union.**

40. Following the phishing-scheme theft from RealPage, federal prosecutors recovered approximately $2.9 million of the stolen funds through criminal restitution proceedings.

41. On information and belief, on or about February 8, 2021, RealPage received $2,908,313.54 of recovered funds from the federal government's criminal restitution proceedings.

42. The Policy contains the following Allocation of Recoveries Provision:

t. Recoveries

(1) Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

> (a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;
> (b) Second, to us in satisfaction of amounts paid in settlement of your claim;
> (c) Third, to you in satisfaction of any Deductible Amount; and
> (d) Fourth, to you in satisfaction of any loss not covered under this policy.

43. Under the Allocation of Recoveries Provision, RealPage is entitled to apply recoveries to *covered loss* in excess of the amount paid under the Policy prior to National Union's recovery of any claim payment; however, this right does not encompass the right to recover *uncovered loss*.

44. Because RealPage has recovered funds from the phishing-scheme theft, the Policy's Allocation of Recoveries Provision obligates RealPage to reimburse National Union for the $1,067,560.73 that National Union paid to RealPage for the loss covered under the Policy.

45. Through counsel, on September 25, 2020, and again on May 11, 2022, National Union issued demand letters to RealPage requesting reimbursement pursuant to the Allocation of Recoveries Provision.

46. To date, RealPage has failed to reimburse National Union the $1,067,560.73 that RealPage is obligated to pay pursuant to the Policy's Allocation of Recoveries Provision.

## CAUSE OF ACTION

### Count 1 - Breach of Contract

47. National Union incorporates and re-alleges the allegations in Paragraphs 1 through 46 as though fully set forth herein.

48. The Policy is a valid and enforceable written contract between National Union and RealPage.

49. National Union adhered to the Policy's terms and fulfilled all of its legal obligations under the Policy.

50. Pursuant to the Allocation of Recoveries Provision, RealPage is obligated to reimburse National Union for $1,067,560.73 – the covered loss under the Policy – based on RealPage's successful recovery of stolen funds.

51. To date, RealPage has failed to fulfill its obligations under the Policy's Allocation of Recoveries Provision.

52. Through RealPage's failure to fulfill its obligations under the Policy, RealPage has breached its contract with National Union.

53. National Union has incurred the following damages and costs from RealPage's breach of the Policy:

    a. $1,067,560.73 of unreimbursed funds;
    b. Attorney's fees; and
    c. Additional costs to be determined at trial.

54. National Union's damages and costs are a direct result of RealPage's breach of the Policy.

55. National Union's damages and costs are a proximate result of RealPage's breach of the Policy.

56. National Union has suffered and will continue to suffer damages as a result of RealPage's breach until RealPage reimburses National Union for $1,067,560.73, which is the amount RealPage owes National Union under the Policy's Allocation of Recoveries Provision.

## JURY DEMAND

57. National Union requests a trial by jury.

## RELIEF SOUGHT

58. National Union respectfully requests the following relief:

   a. All actual damages from Defendant's breach of the Policy;

   b. Attorney's fees and costs pursuant to Section 38.001 of the Texas Civil Practice and Remedy Code; and

   c. Further relief as this Court deems just and proper.

Dated: March 14, 2023                     Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

Saxon Guerriere (SBN: 24078603)
Scott L. Schmookler (*pro hac vice* to be requested)
Meagan P. Vanderweele (*pro hac vice* to be requested)
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel.: (214) 231-4660
sguerriere@grsm.com
sschmookler@grsm.com
mvanderweele@grsm.com

*Attorneys for Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa.*