**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **National Union Fire Insurance Company of Pittsburgh, Pa.,** | |
|         *Plaintiff*, | |
| **v.** | |
| **RealPage, Inc.,** | |
|         *Defendant.* | **Civil Action No.: 3:23-cv-00562-B** |
| **RealPage, Inc.,** | **Judge: Honorable Jane J. Boyle** |
|         *Counter-Claimant*, | |
| **v.** | |
| **National Union Fire Insurance Company of Pittsburgh, Pa.,** | |
|         *Counter-Defendant.* | |

**NATIONAL UNION'S BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Dated: September 29, 2023

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

/s/ *Saxon Guerriere*
Saxon Guerriere (SBN: 24078603)
Meagan P. VanderWeele (*pro hac vice*)
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel.: (214) 231-4660
sguerriere@grsm.com
mvanderweele@grsm.com

*Attorneys for Plaintiff National Union Fire Insurance*
*Company of Pittsburgh, Pa.*

# TABLE OF CONTENTS

SUMMARY .................................................................................................................. 4

STATEMENT OF FACTS ........................................................................................ 6

    A.   RealPage's Phishing Scheme Incident. ............................................................ 6

    B.   The Policy. .................................................................................................... 8

    C.   National Union Partially Covers RealPage's Loss Under the Policy for Stolen Transaction Fees and Denies Coverage for Stolen Client Funds. ..................... 9

    D.   The Northern District of Texas and Fifth Circuit of Appeals Confirm That National Union's Partial Coverage was Proper. .............................................. 10

    E.   RealPage's Recovery of $2,908,130.53 and Refusal to Reimburse National Union. ....... 11

ARGUMENTS AND AUTHORITY ......................................................................... 12

    A.   Summary Judgment Standard: National Union Satisfies its Burden to Obtain Summary Judgment as a Matter of Law on its Breach of Contract Claim Against RealPage. ......... 12

    B.   RealPage Breached its Contract with National Union by Failing to Reimburse National Union As Required Under the Plain Language of the Policy. .......................................... 13

        1.   The Policy's Recoveries provision is unambiguous and subject to its plain meaning... 14

        2.   The recovered funds fall within the scope of reimbursement expressly set forth in the Recoveries provision. .................................................................................. 18

        3.   The "made whole" doctrine does not apply. .............................................. 18

    C.   RealPage's Counterclaim Under Section 541 of the Texas Insurance Code Fails as Matter of Law and Because, At the Very Least, There is a Bona Fide Dispute Regarding the Interpretation of the Policy. .......................................................................... 20

    D.   RealPage's Claim for Attorney's Fees and Costs Fails. .................................. 23

CONCLUSION AND PRAYER ............................................................................... 23

 CERTIFICATE OF SERVICE ................................................................................ 24

**Cases**

*Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank*,
  523 N.E.2d 117 (Ill. App. Ct. 1988) .................................................................. 16, 17

*Allied World Specialty Ins. Co. v. McCathern PLLC*,
  2017 WL 3841610 (N.D. Tex. May 2, 2017) ........................................................ 13

*Balandran v. Safeco In. Co. of Am.*,
  972 S.W. 2d 738 (Tex. 1998) .................................................................................. 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 13

*Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*,
  351 F.3d 642 (5th Cir. 2003) ................................................................................. 13

*Coleman v. Houston Indep. Sch. Dist.*,
  113 F.3d 528 (5th Cir. 1997) ................................................................................. 12

*Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*,
  599 S.W.3d 618 (Tex. App. 2020) ......................................................................... 13

*Fortis Benefits v. Cantu*,
  234 S.W.3d 642 (Tex. 2007) ............................................................................. 19, 20

*Grant v. State Farm Lloyds*,
  2022 WL 254353 (N.D. Tex. Jan. 27, 2022) ........................................................ 21

*Graper v. Mid-Continent Cas. Co.*,
  756 F.3d 388 (5th Cir. 2014) ................................................................................. 21

*Johnson v. State Farm Mut. Auto. Ins. Co.*,
  520 S.W.3d 92 (Tex. App. 2017) ........................................................................... 19

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
  980 S.W.2d 462 (Tex. 1998) .................................................................................. 14

*Lawrence v. CDB Inc.*,
  44 S.W. 3d 554 (Tex. 2001) ................................................................................... 20

*Lee v. Catlin Specialty Ins. Co.*,
  766 F.Supp.2d 812 (S.D. Tex. 2011) ............................................................... 20, 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................ 13

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Dominguez,*
  873 S.W.2d 373 (Tex. 1994) ................................................................. 21

*Ortiz v. Great Southern Fire & Cas. Ins. Co.*,
  597 S.W.2d 342 (Tex. 1980) ................................................................. 19

*Paloma Resources, LLC v. Axis Ins. Co.*,
  452 F. Supp. 3d 549 (S.D. Tex. 2020) .................................................. 13

*Puckett v. U.S. Fire Ins. Co.*,
  678 S.W. 2d 936 (Tex. 1984) ............................................................... 14

*Ramirez v. Geico*,
  548 S.W.3d 767 (2018) ......................................................................... 21

*RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* (*RealPage I*),
  521 F. Supp. 3d 645 (N.D. Tex. 2021),
  *aff'd,* 21 F.4th 294 (5th Cir. 2021) ................................................. passim

*Rodriguez v. Safeco Ins. Co. of Ind.*,
  2019 WL 650437 (W.D. Tex. Jan. 7, 2019) ......................................... 21

*Texas Health Ins. Risk Pool v. Sigmundik*,
  315 S.W.3d 12 (Tex. 2010) ................................................................... 19

*Tokio Marine Specialty Ins. Co. v. Flow-Chem Tech., LLC*,
  2022 WL 567590 (S.D. Tex. 2022) ...................................................... 14

*U.S. Fire Ins. Co. v. Williams*,
  955 S.W.2d 267 (Tex. 1997) ........................................................... 21, 22

*United States v. $480,966.69 in U.S. Currency Seized From Sun Trust Bank Account X4368*,
  No. 3:20-cv-00155-B (N.D. Tex. July 13, 2020) ................................. 11

*ValTex Props. LLC v. Cent. Mut. Ins. Co.*,
  2020 WL 6781944 (N.D. Tex. Nov. 18, 2020) ..................................... 21

**Rules**

FED. R. CIV. P. 56 ...................................................................................... 12

TEX. INS. CODE ANN. § 541 ................................................................ 21, 23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **National Union Fire Insurance Company of Pittsburgh, Pa.,** | |
| *Plaintiff*, | |
| **v.** | |
| **RealPage, Inc.,** | |
| *Defendant.* | |
| **RealPage, Inc.,** | **Civil Action No.: 3:23-cv-00562-B** |
| *Counter-Claimant*, | |
| **v.** | **Judge: Honorable Jane J. Boyle** |
| **National Union Fire Insurance Company of Pittsburgh, Pa.,** | |
| *Counter-Defendant.* | |

**NATIONAL UNION'S BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") files this Brief in Support of its Motion for Summary Judgment against RealPage, Inc. ("RealPage").

## <u>SUMMARY</u>

This Court should render final judgment for National Union on its claim against RealPage for breach of contract, and on RealPage's counterclaims for declaratory judgment, violation of Section 541 of the Texas Insurance Code and for attorney's fees. RealPage improperly seeks to retain a double-recovery of funds to which National Union is entitled pursuant to a Commercial Crime Policy (the "Policy"). Exh. A-1, Commercial Crime Policy No. 01-317-15-74 ("Policy")

(App. 16-84).  It is undisputed that the Policy is a valid contract between National Union and RealPage.  Exh. A, Joint Stipulation of Undisputed Facts ("Joint Stipulation"), ¶ 23 (App. 4-15).  Nor is it disputed that National Union performed under the Policy by reimbursing RealPage for $1,067,560.73 of its partially covered loss resulting from a phishing scheme incident.[1]  *Id.*, ¶ 34 (App. 11).

Thereafter, RealPage continued to pursue other forms of recovery for its loss.  Ultimately, RealPage recovered $2,908,130.53 in stolen funds.  *Id.*, ¶ 48 (App. 13).  National Union and RealPage agreed to a specific method to allocate recoveries in the Policy.  *Id.*, ¶ 28 (App. 9).  Pursuant to the Policy's "Recoveries" provision, RealPage is required to reimburse National Union for recoveries in excess of the amount paid under the Policy.  Exh. A-1, Policy, Condition t ("Recoveries"), at p. 21 (App. 36).  Because RealPage recovered funds in excess of the amount National Union paid under the Policy, National Union twice made demand upon RealPage for reimbursement of the $1,067,560.73 loss amount National Union paid.  Exh. A, Joint Stipulation, ¶ 49 (App. 14); Exh. A-5 (App. 121-124); Exh. A-6 (App. 125-127).  Despite unambiguous policy language requiring reimbursement, RealPage has refused to reimburse National Union, thus forcing National Union to file suit to enforce the Policy's plain terms.  Exh. A, Joint Stipulation, ¶ 50 (App. 14); Exh. A-7 (App. 128-130); Exh. A-8 (App. 131-133).  As set forth below, National Union is entitled to summary judgment and full reimbursement under the Policy.

---

[1] Following National Union's determination that RealPage's loss was partially covered under the Policy, RealPage filed suit against National Union in this Court for breach of contract, declaratory relief, and violations of the Texas Insurance Code. Exh. A, Joint Stipulation, ¶ 35 (App. 11); *see RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* (*RealPage I*), 521 F. Supp. 3d 645 (N.D. Tex. 2021) (Civil Action No. 3:19-CV-01350-B), *aff'd RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 F.4th 294 (5th Cir. 2021).  Both this Court and the Fifth Circuit found that National Union's partial coverage under the Policy was proper, and that National Union fulfilled its obligations under the Policy. Exh. A, Joint Stipulation, ¶ 41 (App. 12).

RealPage's counterclaim against National Union for declaratory relief fails as a matter of law. The Policy's recovery allocation condition is an unambiguous provision to which the parties mutually agreed. RealPage cannot seek to alter the terms of that provision by inserting additional words and applying unsupported interpretations to clear and specific policy language. Second, even if the Court were to find that the recovery allocation provision was ambiguous (which it is not), RealPage has offered no evidence to support its interpretation of that provision. RealPage contends that the recovery allocation provision applies only to recovery of loss covered by the Policy. Yet, RealPage has made no effort to produce any parol evidence to support that interpretation, because no such evidence exists.

RealPage's counterclaim against National Union for alleged violation of Section 541 of the Texas Insurance Code fails as well. RealPage cannot prove any misrepresentation of the Policy. And, even if it could (which it cannot), RealPage has not suffered any damage. The parties' dispute is at best a bona fide dispute regarding interpretation of the Policy's Recoveries provision. Thus, RealPage cannot prevail under Chapter 541 and is not entitled to recovery of any attorney's fees.

For all these reasons, this Court should grant National Union's Motion and render judgment in favor of National Union on its breach of contract claim against RealPage and all of RealPage's counterclaims.

<u>**STATEMENT OF FACTS**</u>

The pertinent facts are not in dispute. The following facts are taken from the parties' Joint Stipulation of Facts.

**A.      RealPage's Phishing Scheme Incident.**

RealPage provides software to the real estate industry. Exh. A, Joint Stipulation, ¶ 3 (App. 6). One of the services RealPage provides is the collection, management, and transfer of rent payments and other funds from residents to the owners of residential properties. *Id.* In 2018,

RealPage maintained and provided an online payment processing platform designed to collect rent from tenants and then disburse those funds into landlord-clients' bank accounts. *Id.*, ¶ 4 (App. 6) As part of this service, RealPage utilized third-party payment processor Stripe, Inc. ("Stripe") to process rent payments. *Id.*, ¶ 7 (App. 6). Using an online platform maintained by RealPage, tenants and landlord-clients submitted bank account and credit information to RealPage, and RealPage transmitted that information to Stripe. *Id.*, ¶¶ 6, 8 (App. 6). Following instructions provided by RealPage, Stripe transferred payments from tenants' bank accounts into its own bank account and then distributed those funds to RealPage's accounts (less any transactional fees owed to RealPage). *Id.*, ¶¶ 9-13 (App. 6-7). The funds pertaining to various merchants, including transaction fees owed to RealPage, were commingled within Stripe's bank account. *Id.*, ¶ 11 (App. 7).

In May of 2018, hackers successfully deployed a phishing scheme and obtained RealPage's login credentials for the Stripe online payment processing platform. *Id.*, ¶ 15 (App. 7). Upon obtaining RealPage's login credentials to the payment processing platform, the hackers altered the disbursement instructions to divert payments from Stripe's bank account that collected tenants' rent to accounts under the hackers' control. *Id.*, ¶ 16 (App. 7). Ultimately, the hackers diverted more than $10 million in commingled funds from Stripe's bank account that had not yet been disbursed to the appropriate recipients into accounts under the hackers' control ("Stolen Funds"). *Id.*, ¶ 17 (App. 7). Among the Stolen Funds were transaction fees allocated for RealPage and rent payments intended for RealPage's landlord-clients. *Id.*, ¶ 18 (App. 7).

RealPage and Stripe were alerted to the fraud and were able to reverse a portion of the diverted payments and freeze any ongoing transfers. *Id.*, ¶ 19 (App. 7). Meanwhile, RealPage

directly reimbursed over $9 million to its landlord-clients whose funds were stolen as a result of the phishing scheme. *Id.*, ¶ 20 (App. 8).

**B.     The Policy.**

Prior to the phishing scheme, RealPage obtained insurance through National Union. National Union issued Commercial Crime Policy No. 01-317-15-74 to RealPage, with a policy period of March 31, 2018, to March 31, 2019, and limits of $5 million per occurrence and subject to a $50,000 deductible (the "Policy"). Exh. A, Joint Stipulation, ¶ 22 (App. 8); Exh. A-1, Policy (App. 16-84). The Policy includes a Computer Fraud insuring agreement and a Funds Transfer Fraud insuring agreement. The Computer Fraud insuring agreement provides:

> **A. Insuring Agreements**
> Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition E.1.j.:
> * * *
> **6. Computer Fraud**
> We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":
> a. To a person "other than a messenger" outside of those "premises"; or
> b. To a place outside those "premises".

Exh. A, Joint Stipulation, ¶ 25 (App. 8); Exh. A-1, Policy, pp. 13-14 (App. 28-29).

The Funds Transfer Fraud insuring agreement provides:

> **A. Insuring Agreements**
> Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition E.1.j.:
> * * *
> **7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account."

The Policy contains an "ownership clause." Condition P states:

The property covered under this policy is limited to property:

(1)     That you own or lease; or

(2)     That you hold for others whether or not you are legally liable for the loss of such property.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

Exh. A, Joint Stipulation, ¶ 26 (App. 9); Exh. A-1, Policy, pp. 13-14 (App. 28-29).

The Policy also contains the following allocation of recoveries provision:

**t. Recoveries**

(1)     Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this policy.

Exh. A, ¶ 28 (App. 9); Exh. A-1, Condition t, at p. 21 (App. 36). This provision further states, as follows:

(2)     Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

Exh. A-1, Condition t, at p. 21 (App. 36).

**C.     National Union Partially Covers RealPage's Loss Under the Policy for Stolen Transaction Fees and Denies Coverage for Stolen Client Funds.**

Following the phishing scheme incident, RealPage sought coverage under the Policy for $6,022,021.00 of Stolen Funds, which consisted of rent payments intended for landlord-clients and transaction fees allocated for RealPage. Exh. A, Joint Stipulation, ¶ 29 (App. 9). Following its investigation, National Union issued its preliminary coverage analysis in a letter dated January 4,

2019. *Id.*, ¶ 30 (App. 10); Exh. A-2 (App. 85-94). National Union determined that "[RealPage]

has sustained a direct covered loss of the funds it owned at the time of the diversion in the gross

amount of $1,231,692.78, which represents the transaction fees earned from the landlord-clients.

Exh. A, ¶ 32 (App. 10); Exh. A-2, at pp. 8-9 (App. 92-93). Therefore, RealPage was entitled to

only $1,067,560.73 of those fees under the Computer Fraud coverage part. Exh. A, ¶ 31 (App.

10). National Union denied coverage for the remaining amount of RealPage's claimed loss

because RealPage did not own or hold the stolen rent payments that belonged to landlord-clients.

*Id.*, ¶ 33 (App. 10). Pursuant to Section 542.057(a) of the Texas Insurance Code, on January 31,

2019, National Union paid RealPage $1,067,560.73 for partial coverage under the Policy. *Id.*, ¶

34 (App. 11).

**D.      The Northern District of Texas and Fifth Circuit of Appeals Confirm That National Union's Partial Coverage was Proper.**

Following National Union's determination that RealPage's loss was partially covered

under the Policy, RealPage filed suit against National Union in the United States District Court for

the Northern District of Texas for breach of contract, declaratory relief, and violations of the Texas

Insurance Code. Exh. A, ¶ 35 (App. 11); *see RealPage Inc.*, 521 F. Supp. 3d at 645. This Court

granted summary judgment to National Union on all counts on February 24, 2021. Exh. A, ¶ 36

(App. 11). This Court found that National Union's partial coverage was proper on that basis that

RealPage never "held" the stolen client funds because those funds were deposited into Stripe's

bank account at the time of their theft:

> In sum, funds that are maintained in a commingled account in a third party's name,
> at a third-party bank, which the insured can direct but not access, are not funds
> "held" by the insured. The Court recognizes that RealPage might have intended to
> "hold" the client's funds. Further, the Court acknowledges that the bad actors
> utilized RealPage credentials to obtain the funds. Nevertheless, the Court's task is
> to interpret the Policy's language. And here, based on the plain meaning of "hold,"
> RealPage did not hold the funds. RealPage could have contracted for a broader

> definition of covered property. But it did not. Accordingly, the Court concludes that the client funds are not covered property under the Policy and GRANTS summary judgment in favor of National Union and Beazley on RealPage's declaratory judgment, breach-of-contract, and anticipatory breach-of-contract claims.

*RealPage Inc.*, 521 F. Supp. 3d at 659; Exh. A, ¶ 38 (App. 11-12).

RealPage appealed this Court's judgment to the Fifth Circuit Court of Appeals, and on December 22, 2021, the Fifth Circuit affirmed this Court's holding. *See RealPage, Inc.*, 21 F.4th at 299-300; Exh. A, ¶ 39 (App. 12). In its opinion, the Fifth Circuit determined that RealPage did not hold the stolen landlord-client funds at the time of the theft: "RealPage never possessed its property manager clients' funds that got caught in the phishers' net." Exh. A, ¶ 40 (App. 12). Both this Court and the Fifth Circuit found that National Union's partial coverage under the Policy was proper, and that National Union fulfilled its obligations under the Policy. *Id.*, ¶ 41 (App. 12).

## E. RealPage's Recovery of $2,908,130.53 and Refusal to Reimburse National Union.

Shortly after RealPage discovered the phishing-theft scheme, its Executive Vice President, William Chaney contacted the Dallas Field Office of the United States Secret Service ("USSS") and reported that RealPage was a victim of a fraud scheme. *Id.*, ¶ 42 (App. 12). The USSS launched an investigation, and ultimately seized funds in 35 bank accounts that received fraudulently obtained proceeds totaling approximately $2.9 million ("Seized Funds"). *Id.*, ¶ 43 (App. 12). Upon completion of the USSS' investigation, the United States filed a forfeiture complaint in this Court seeking, among other relief, public notice advising "[a]ll persons having any interest in or right against" the Seized Funds, an order condemning the Seized Funds, and a declaration and decree that the Seized Funds are forfeited to the United States. *See United States v. $480,966.69 in U.S. Currency Seized From Sun Trust Bank Account X4368*, No. 3:20-cv-00155-B (N.D. Tex. July 13, 2020). *Id.*, ¶ 44 (App. 12-13); Exh. A-3 (App. 95-109).

In August 2020, RealPage filed a form Petition for Remission of Forfeiture ("Petition") asserting its rights to the Seized Funds. Exh. A, ¶ 45 (App. 13); Exh. A-4 (App. 110-120). In its Petition, RealPage acknowledged that it had already recovered a portion of the Stolen Funds. Exh. A, ¶ 46 (App. 13). RealPage also acknowledged that "**a portion of the stolen funds** that cannot be distinctly identified **represented transaction fees owed to RealPage by its clients**" (i.e. loss covered under the Policy). *Id.*, ¶ 47 (App. 13). Ultimately, the United States government remitted $2,908,130.53 of Seized Funds to RealPage. *Id.*, ¶ 48 (App. 13).

Through counsel, on September 25, 2020, and again on May 11, 2022, National Union issued demand letters to RealPage requesting reimbursement pursuant to the Policy's Recoveries Provision. Exh. A, ¶ 49 (App. 14); Exh. A-5 (App. 121-124); Exh. A-6 (App. 125-127). Through counsel, on September 30, 2020 and June 6, 2022, RealPage responded to National Union's demand letters and refused to repay any of the amount demanded by National Union. Exh. A, ¶ 50 (App. 14); Exh. A-7 (App. 128-130); Exh. A-8 (App. 131-133). In its June 6, 2022 letter, RealPage admitted that its recovery did not specifically represent a portion of is uncovered loss, stating as follows: "The amounts recovered were unbundled and not specifically identified as representing particular aspects of RealPage's loss." Exh. A, ¶ 51 (App. 14).

## ARGUMENT AND AUTHORITY

**A.    Summary Judgment Standard: National Union Satisfies its Burden to Obtain Summary Judgment as a Matter of Law on its Breach of Contract Claim Against RealPage.**

Summary judgment is proper on a claim or defense when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence in a light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the non-

movant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

To establish "a breach of contract claim, a plaintiff must establish the existence of a valid contract, performance or tendered performance by the plaintiff, the defendant breached that contract, and damages resulting from the breach." *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP*, 599 S.W.3d 618, 625 (Tex. App. 2020). Here, the parties do not dispute that the Policy constitutes a valid contract and that National Union performed under that contract; rather, the parties dispute the interpretation of the Policy's allocation of recoveries provision. Exh. A., ¶ 23 (App. 8). Because the Policy is clear and unambiguous, it must be enforced as written. *Paloma Resources, LLC v. Axis Ins. Co.*, 452 F. Supp. 3d 579, 584-85 (S.D. Tex. 2020) (citation omitted). Under the plain terms of the "Recoveries" provision, National Union is entitled to reimbursement.

**B.     RealPage Breached its Contract with National Union by Failing to Reimburse National Union As Required Under the Plain Language of the Policy.**

Texas law governs this diversity case. *See Cleere Drilling Co. v. Dominion Expl. & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003). Under Texas law, insurance policies are controlled by the same rules of construction that apply to contracts. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W. 2d 738, 740-41 (Tex. 1998) (citations omitted). Generally, courts are required to "determine the intention of the parties as expressed in the language of the policy." *Allied World Specialty Ins. Co. v. McCathern PLLC*, No. 3:16-CV-2489-C, 2017 WL 3841610, at *2 (N.D. Tex. May 2, 2017) (citation omitted). Therefore, the "parties' intention is to be determined by an inquiry limited to the four corners of the insurance policy and what is actually stated therein." *Id.* (citation omitted). Although "insurance policies are strictly construed in favor of the insured in order to avoid

exclusion of coverage," (*Puckett v. U.S. Fire Ins. Co.*, 678 S.W. 2d 936, 938 (Tex. 1984) (citations omitted)), "rules favoring the insured only apply when the policy is ambiguous." *Tokio Marine Specialty Ins. Co. v. Flow-Chem Tech., LLC*, No. 4:20-cv-01523, 2022 WL 267590, at *4 (S.D. Tex. Jan. 28, 2022).

When the terms of an insurance policy are clear and unambiguous, a court may not vary those terms and must enforce it as written. *Puckett*, 678 S.W. 2d at 938. "An ambiguity does not arise merely because a party offers a conflicting alternative interpretation." *Tokio Marine*, 2022 WL 267590, at *3 (citation omitted). "Nor does the parties' disagreement about the policy's meaning create an ambiguity." *Id.*; *see also Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) ("An ambiguity does not arise, however, merely because the parties advance conflicting contract interpretations.").

### 1.  The Policy's Recoveries provision is unambiguous and subject to its plain meaning.

Here, there is no ambiguity in the Policy. The Policy contains an express recovery provision that delineates allocation of recoveries as follows:

**t. Recoveries**

(1)  Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:
  (a)  First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;
  (b)  Second, to us in satisfaction of amounts paid in settlement of your claim;
  (c)  Third, to you in satisfaction of any Deductible Amount; and
  (d)  Fourth, to you in satisfaction of any loss not covered under this policy.

(2)  Recoveries do not include any recovery:
  (a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or
  (b) Of original "securities" after duplicates of them have been issued.

Exh. A-1, Condition t (App. 36). The phrase "Any recoveries" must be given its plain meaning, and includes recovery of both covered and uncovered loss. Indeed, both categories of loss are contemplated within the recovery allocation provision. *Compare* Exh. A-1, Condition t, subsection (a) ("your covered loss") *with* subsection (d) ("any loss not covered").

Further, Subsection (2) expressly carves out certain categories of recovery that are not included in the definition of "any recovery" and, thus, are not included within the scope of the recovery allocation provision. *Id.*, Condition t, subsection (2). Loss that is not covered under the Policy is **not** one of those categories that is expressly excluded from the Recoveries position, thus demonstrating the parties' intent to include uncovered loss within the scope of that provision.

Under the plain terms of this provision, RealPage is not entitled to recover uncovered loss until National Union has been fully reimbursed. Recoveries are allocated as follows: (1) First, to RealPage to satisfy its covered loss in excess of the amount paid under the Policy; (2) Second, to National Union to reimburse the covered loss amount; (3) Third, to RealPage to satisfy any deductible amount; and (4) Fourth, to RealPage to satisfy any loss not covered under the Policy. *Id.* Therefore, while RealPage is entitled to apply recoveries to covered loss in excess of the amount paid under the Policy prior to National Union's recovery of any claim payment, that right does not encompass the right to recover uncovered loss. On the contrary, subsection (a) and subsection (d) differentiate between covered and uncovered loss – with subsection (a) expressly applying to "**covered loss** in excess of the amount paid under the policy," and subsection (d) expressly stating that recovery is allocated to "any loss **not covered under** this policy" only after National Union recovers any covered loss. *Id.* (emphasis added).

There is no dispute that National Union paid RealPage $1,067,560.73 for its partially covered loss following the underlying phishing scheme event. Exh. A, Joint Stipulation, ¶ 34

15

(App. 11). Both this Court and the Fifth Circuit found that National Union's partial coverage under the Policy was proper, and that National Union fulfilled its obligations under the Policy. *Id.*, ¶ 41 (App. 12). Since then, RealPage has recouped $2,908,130.53 in funds stolen from the phishing scheme. *Id.*, ¶ 48 (App. 13). Applying the plain terms of Recoveries provision, under subsection (b), RealPage is required to reimburse National Union for the full amount that National Union paid under the Policy, regardless of the nature of RealPage's recovered funds (i.e. recovery of covered versus uncovered loss). RealPage could have contracted for a more narrow definition of "any recoveries," but it did not, a reality this Court previously recognized in the prior coverage litigation. *RealPage Inc.*, 521 F. Supp. 3d at 659 ("RealPage could have contracted for a broader definition of covered property. But it did not.") The Policy must be enforced as written, and RealPage's refusal to reimburse National Union violates the Policy's express terms.

While few courts have addressed the application of a recovery provision in a commercial crime policy, the Illinois Appellate Court has done so in an analogous case. *Aetna Casualty & Surety Co. v. Oak Park Trust & Savings Bank*, 523 N.E.2d 117 (Ill. App. Ct. 1988). In *Oak Park Trust & Savings*, the insured-bank suffered a covered loss as the result of a fraudulent loan made by a former employee. *Id.* at 118. The insured-bank submitted a claim with the insurer seeking $104,500 for the loss upon subtracting the bond's $25,000 deductible. *Id.* The insurer paid the insured-bank $81,432.81 to resolve the claim. *Id.* Following a criminal trial, a court ordered the wrongdoer to pay $40,000 to the insurer and $25,000 to the insured-bank. *Id.* at 119.

The insurer in *Oak Part Trust & Savings* filed suit against the insured-bank for breach of contract "asserting that it was entitled to the $25,000 in restitution" received by the insured-bank pursuant to "the recovery provisions of the bond." *Id.* The trial court granted the insurer's motion for summary judgment, and the appellate court affirmed. Rejecting the insured-bank's public

policy argument against enforcement of the recovery provision, the appellate court agreed that the parties' "right to recovery is governed by the terms of the salvage provision of the bond," and that the plain language of the provision required that "any recoveries shall be applied first in reimbursement of the underwriter and thereafter in reimbursement of the insured for that part of such loss within such deductible amount." *Id.* at 121. Because the insured "accepted payments totaling $25,000 directly from [the wrongdoer] with knowledge that [the insurer] was entitled to first recovery," the appellate court found that the insured-bank breached its contract. *Id.*

*Oak Park Trust & Savings* should inform the court's decision here, because the facts of that matter and the recovery provision are nearly identical. Like the bond's recovery provisions in *Oak Park Trust & Savings*, the recovery provision in the Policy provides that any recoveries in excess of the covered loss must first go to the insurer to reimburse the covered loss and that the insured is not entitled to recover uncovered loss until the insurer has been fully reimbursed. Exh. A-1, Policy, Condition t (App. 36). Importantly, the court in *Oak Park Trust & Savings* rejected the insured's argument that the insurer should be estopped from enforcing the bond's recovery provision on public policy grounds. 523 N.E.2d at 121. Just as in *Oak Part Trust & Savings*, this Court has already determined that National Union properly paid the entire amount of RealPage's partially covered claim under the Policy. *See RealPage*, 521 F. Supp. 645, *aff'd RealPage, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 F.4th 294 (5th Cir. 2021). Although RealPage may have suffered a net loss as a result of the phishing scheme incident, National Union's right to recovery is governed by the terms of the Recoveries provision, and that provision does not limit National Union's right to reimbursement based on the extent of RealPage's net loss. As such, the Policy must be enforced as written, and RealPage is required to reimburse National Union for the full amount it paid for RealPage's partially covered loss.

### 2. The recovered funds fall within the scope of reimbursement expressly set forth in the Recoveries provision.

Faced with clear and unambiguous Policy language, RealPage contends that the Recoveries provision "is limited to recoveries for 'loss' contemplated and covered by the Policy." Dkt. 5, Counterclaim, ¶ 113, at p. 13. However, RealPage's interpretation ignores that the Policy explicitly defines which categories of recovery are outside the scope of the Recoveries provision, and "uncovered loss" is noticeably absent from that definition. Exh. A-1, Condition t, subsection (2) (App. 36). Under RealPage's proffered interpretation of the Recoveries provision, only recovery of covered loss is subject to the allocation of recoveries set forth in Condition t of the Policy. The plain language of the Policy rejects any such interpretation.

Even if RealPage's unsupported interpretation of the Policy was correct (which it is not), RealPage admits that its recovery of $2,908,130.53 in stolen funds includes recovery of loss covered by the Policy. For example, RealPage admits that the amounts recovered "**were unbundled and not specifically identified as representing particular aspects of RealPage's loss**." Exh. A, ¶ 51 (App. 14); Exh. A-8 (App. 132) (emphasis added). RealPage suggests that its recovery "can be entirely associated with uncovered loss." Exh. A-8 (App. 132). However, RealPage admits that "**a portion" of the remitted funds "represented transaction fees owed to RealPage by its clients**" (i.e. covered loss). Exh. A, ¶ 48 (App. 13). Thus, even under RealPage's interpretation, National Union is entitled to reimbursement, because RealPage acknowledges that a portion of its recovery constitutes covered loss.

### 3. The "made whole" doctrine does not apply.

National Union expects that RealPage will argue that the "made whole" doctrine applies and that it is entitled to a full recovery prior to reimbursement of National Union's claim payment, regardless of the terms of the Policy. In general, the "made whole doctrine" is a common law "rule

that an insurer is not entitled to subrogation of . . . benefits paid to the insured unless the insured has been 'made whole'" from the underlying incident that results in a loss. *Johnson v. State Farm Mut. Auto. Ins. Co.*, 520 S.W.3d 92, 102 (Tex. App. 2017). Pursuant to this doctrine, if "either an insured or the insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume." *Ortiz v. Great Southern Fire & Cas. Ins. Co.*, 597 S.W.2d 342, 344 (Tex. 1980).

While Texas courts follow the "made whole doctrine," the Texas Supreme Court has held that the doctrine does not trump contractual allocation provisions: "[t]he contract's specific language controls . . . and the equitable defense of the 'made whole' doctrine must give way." *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007). In other words, "[t]he equitable 'made whole' doctrine is inapplicable when the parties' agreed contract provides a clear and specific right of subrogation." *Id.* The rationale behind this rule is that "contract rights generally arise from contract language; they do not derive their validity from principles of equity but directly from the parties' agreement." *Id.* at 647. Thus, according to the Texas Supreme Court, "contract-based subrogation rights should be governed by the parties' express agreement and not invalidated by equitable considerations that might control by default in the absence of an agreement." *Id.* at 650; *see also Texas Health Ins. Risk Pool v. Sigmundik*, 315 S.W.3d 12, 13 (Tex. 2010) ("A trial court abuses its discretion when it invokes the equitable 'made whole' doctrine to circumvent a party's contractual right to subrogation.").

Here, National Union and RealPage agreed to a specific method to allocate recoveries in the Policy. That provision details how recoveries are to be allocated, including the treatment of uncovered loss. This contractual language controls the allocation of recovery and requires RealPage to reimburse National Union what it is owed under the Policy's express terms. "Where

a valid contract prescribes particular remedies or imposes particular obligations, equity must yield unless the contract violates positive law or offends public policy." *See Cantu*, 234 S.W.3d at 648-9. "Neither subrogation nor reimbursement clauses violate Texas public policy," and Texas has "long recognized a strong public policy in favor of preserving the freedom of contract." *Id.* at 649 (quoting *Lawrence v. CDB Services, Inc.*, 44 S.W. 3d 554, 553 (Tex. 2001)). Accordingly, National Union is entitled to full reimbursement under the Policy's Recoveries provision. *See Cantu*, 234 S.W.3d at 650 (finding that "[an insurer] thus retained an unfettered right to recover the proceeds from the settlement of the underlying suit, the only limitation being the amount of recovery—what [the insurer] had paid under the contract" based on a contract's express terms dictating allocation of recovery).

## C. RealPage's Counterclaim Under Section 541 of the Texas Insurance Code Fails as Matter of Law and Because, At the Very Least, There is a Bona Fide Dispute Regarding the Interpretation of the Policy.

RealPage alleges that National Union violated Section 541 of the Texas Insurance Code by misrepresenting the Policy's Recoveries provision. Dkt. 5, Counterclaim, Count II, ¶¶ 117-122. RealPage's Counterclaim fails for at least four reasons.

First, RealPage fails to point to an express misrepresentation or omission regarding the Recoveries provision that National Union allegedly made. RealPage claims – without citation to evidence – that National Union violated Sections 541.051, 541.060 and 541.061 by "misrepresent[ing] that the Recoveries Condition entitles it to the Remitted funds and that 'any recoveries' refers to any recovery, whether for losses under the Policy or not." Dkt. 5, Counterclaim, ¶ 108. Under these circumstances, RealPage has failed to meet its burden as a matter of law. *Lee v. Catlin Specialty Ins. Co.*, 766 F.Supp.2d 812, 825-28 (S.D. Tex. 2011) (insurance company was entitled to summary judgment dismissing plaintiff's misrepresentation

claim under Section 541 of the Texas Insurance Code where plaintiff pointed to no evidence in the record to support his misrepresentation claim); *see also Ramirez v. GEICO*, 548 S.W.3d 767, 772 (2018) (granting summary judgment for insurer on plaintiff's Section 541 claim where plaintiff "did not point to any specific misrepresentations").

Second, RealPage has not shown that any purported misrepresentation caused any damage. To recover under Sections 541 for alleged misrepresentation, RealPage must prove that the purported misrepresentation "was a producing cause of damages." *Gant v. State Farm Lloyds*, No. 3:21-CV-2164-B, 2022 WL 254353, at *4 (N.D. Tex. Jan. 27, 2022) (quoting *ValTex Props. LLC v. Central Mut. Ins. Co.,* No. 3:20-CV-1992-B, 2020 WL 6781944, at *4 (N.D. Tex. Nov. 18, 2020)); *see* TEX. INS. CODE ANN. § 541.151 (authorizing private actions for those "who sustain[ ] actual damages ... caused by" an insurer's violation of the Texas Insurance Code). For this reason, "post-loss statements generally cannot serve as the basis for fraud or misrepresentation claims because the insured did not rely on or 'take action' based on such statements to their own detriment." *Gant*, 2022 WL 254353, at *4 (quoting *Rodriguez v. Safeco Ins. Co. of Ind.*, No. SA-18-CV-00851-OLG, 2019 WL 650437, at *5 (W.D. Tex. Jan. 7, 2019)). Because RealPage has not shown that National Union's alleged misrepresentation was the producing cause of any damage, its counterclaim under Section 541 fails as a matter of law. *Gant*, 2022 WL 254353, at *4-5; *see also Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014)) (finding the failure to allege reliance or causation fatal to the plaintiff's § 541.051 and § 541.061 claims).

Third, the dispute between RealPage and National Union is at best a bona fide dispute regarding interpretation of the Policy's Recoveries provision. *See U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Dominguez*, 873 S.W.2d 373, 376-77 (Tex. 1994) (holding that "evidence that only shows a bona fide coverage

dispute about the insurer's liability on the contract does not rise to the level of bad faith")).  An insurer that proves it had a reasonable basis for denying a claim enjoys immunity from statutory bad faith under the Texas Insurance Code even if the denial ultimately is found to be erroneous. *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818-824 (S.D. Tex. 2011) (granting summary judgment to insurer on common law and statutory bad faith claims when the evidence showed a bona fide dispute as to coverage).

National Union's position is even stronger because the instant dispute involves interpretation of a policy provision, not denial of a claim.  However, the same principles apply. For example, in *U.S. Fire Ins. Co. v. Williams*, the Texas Supreme Court held that an insurer cannot be liable for bad faith simply because it misinterprets a rule.  955 S.W.2d 267, 269 (Tex. 1997). In *Williams*, a worker's compensation insurer denied death benefits to a surviving spouse based on the insurer's interpretation of a Worker's Compensation Commission rule that provides for the disqualification of a spouse under certain circumstances if the spouse had lived apart from the decedent for more than one year prior to the death.  *See id.* at 267-68.  While acknowledging that the insurer may have misinterpreted the rule, the Texas Supreme Court held that the insurer was not liable for bad faith because its interpretation of the rule was at least arguable and not legally groundless.  *See id.* at 269.

Here, National Union has far exceeded the standard set forth by the Texas Supreme Court in *U.S. Fire Ins. Co. v. Williams* by articulating an interpretation of the Policy's Recoveries provision that is not just arguable but is, in fact, correct.  National Union seeks reimbursement of the loss amount paid to RealPage under the Policy because the plain language of the Recoveries provision makes clear that (1) any recoveries in excess of the covered loss must first go to National Union to reimburse the covered loss amount and (2) RealPage is not entitled to recover uncovered

loss until National Union has been fully reimbursed. At the very least, the undisputed facts demonstrate a bona fide dispute that precludes any claim under Section 541 of the Texas Insurance Code. For the reasons discussed in this Brief, those grounds merit summary judgment in favor of National Union.

Fourth, in addition to the foregoing legal obstacles to RealPage's Section 541 claims against National Union, RealPage has no evidence to support its allegations. RealPage has produced no evidence that National Union knowingly violated Section 541 of the Texas Insurance Code. "Knowingly" means "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages . . . is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness." TEX. INS. CODE ANN. §541.002. RealPage has not and cannot show National Union's conduct in interpreting the plain language of the Policy rose even remotely to this level. Accordingly, RealPage has no evidence that National Union committed the acts complained of under Section 541, let alone that such alleged acts were committed knowingly, and National Union is entitled to summary judgment on RealPage's counterclaim in Count II.

## D. RealPage's Claim for Attorney's Fees and Costs Fails.

RealPage seeks recovery of attorney's fees and other costs for pursuit of its counterclaims under Section 541 of the Texas Insurance Code in this breach of contract dispute. Dkt. 5, Counterclaim, ¶¶ 123-124. RealPage's claim for those costs fails because, for the reasons stated above, National Union did not violate the Texas Insurance Code.

## CONCLUSION AND PRAYER

For the reasons set forth herein, National Union Fire Insurance Company of Pittsburgh, Pa. respectfully requests that this Honorable Court grant its Motion for Summary Judgment in its

entirety and enter judgment in favor of National Union as to its claims against RealPage and as to all of RealPage's counterclaims, and grant all other relief to which National Union is entitled.

Dated: September 29, 2023      Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

_/s/_____
Saxon Guerriere (SBN: 24078603)
Meagan P. VanderWeele (*pro hac vice*)
2200 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel.: (214) 231-4660
sguerriere@grsm.com
mvanderweele@grsm.com

*Attorneys for Plaintiff and Counter-Defendant,*
*National Union Fire Insurance Company of Pittsburgh, Pa.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of September, 2023, a true and correct copy of the foregoing was electronically filed in the above-captioned action via the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

By:     /s/ Meagan P. VanderWeele
        Meagan P. VanderWeele (*pro hac vice*)